ELLIOT ENOKI
United States Attorney
District of Hawaii

LESLIE E. OSBORNE, JR.
LARRY L. BUTRICK
Assistant U.S. Attorneys
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 1 3 2001

at ____ o'clock and ___ min. ___ M.
WALTER A.Y.H. CHINN, CLERK

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>MONTEZ SALAMASINA OTTLEY, (01)<br>HELEN A. SCHLAPAK,　　　(02)<br><br>　　　　　　Defendants. | ) CR. NO. 00-00126 HG<br>)<br>) SUPERCEDING INDICTMENT<br>) [18 U.S.C. §§ 287, 371, 982<br>) 1341, 1343, 1956 (h), 1956<br>) (a)(1)(A)(i), 1956<br>) (a)(1)(B)(i), 1956<br>) (a)(1)(B)(ii), 1957, 26 U.S.C.<br>) § 7206 AND 31 U.S.C. §<br>) 5324(a)(3)]<br>) |

**SUPERCEDING
INDICTMENT
[FIRST]**

**COUNTS 1-9
[MAIL FRAUD]**

The Grand Jury charges that:

### I.   THE SCHEME TO DEFRAUD

1.    Beginning in or about June of 1997 and continuing

to in or about February of 2000, within the District of Hawaii,

and elsewhere, defendants MONTEZ SALAMASINA OTTLEY and HELEN A.

SCHLAPAK, and including John Wright, Shyuan Tan, Rande Scott
Worcester and Paul Lazzaro, who are not charged in this
Indictment, knowingly devised and intended to devise a scheme and
artifice to defraud and to obtain money from others by means of
false and fraudulent pretenses, representations and promises, as
well as omissions of material facts, well knowing at the time
that such pretenses, representations, promises and omissions
would be and were false when made.

## II.  MEANS OF THE SCHEME TO DEFRAUD

2.    By means of the foregoing false and fraudulent
pretenses, representations and promises, as well as omissions of
material facts, the defendants, and the uncharged schemers,
induced and caused others to induce, approximately Five thousand
(5,000) individuals to invest approximately Sixty Seven Million
dollars($67,000,000) in their "Cayman Islands Investment
Program," for the alleged purpose of earning a high rate of
interest from Cayman Islands investments, whereas, defendants,
and the uncharged schemers, well knew and intended, that the
money be diverted to their own personal gain and use, to the
detriment of the investors.

## III.  MISREPRESENTATIONS

3.    It was part of the scheme and artifice to defraud
that the defendants, and the uncharged schemers, in describing
the "Cayman Islands Investment Program," misrepresented to

2

investors that their money would be invested in the Cayman Islands in order to earn a high rate of interest.

4.    It was also part of the scheme and artifice to defraud that the defendants, and the uncharged schemers, falsely represented to investors that Paul Lazzaro had a broker's number and license in the Cayman Islands and was the principal broker for the investment program.

5.    It was also part of the scheme and artifice to defraud that the defendants, and the uncharged schemers, misrepresented to investors that under the "Cayman Islands Investment Program" investors would receive a fee or "interest" for the use of their money.

6.    It was also part of the scheme and artifice to defraud that the defendants, and the uncharged schemers, misrepresented to investors that the fee or "interest" constituted interest earned from Cayman Islands investments.

7.    It was also part of the scheme and artifice to defraud that the defendants, and the uncharged schemers, falsely promised that investors would receive fees or "interest" of eight percent per week for the use of their money for thirteen (13) weeks.

8.    It was also part of the scheme and artifice to defraud that the defendants, and the uncharged schemers, deceived investors into believing that their investments were risk free because their money would be held for only 13 weeks and then the

3

investors would have the choice to rollover the initial investment for another 13 weeks or receive the initial investment back, when in reality, the defendants, and the uncharged schemers, deposited investors' money directly into bank accounts for personal use and to promote the fraud by making lulling payments.

9.    It was also part of the scheme and artifice to defraud that the defendants, and the uncharged schemers, in order to induce investments, stated to investors that Paul Lazzaro had successfully brokered other Cayman Islands Investment Programs, when in fact Paul Lazzaro had never brokered a single Cayman Islands Investment Program.

10.    It was also part of the scheme and artifice to defraud that the defendants, and the uncharged schemers, in order to induce investments, represented to investors that the "Cayman Islands" investment portfolio had been in existence for over twenty (20) years.

11.    It was also part of the scheme and artifice to defraud that the defendants, and the uncharged schemers, in order to induce investments, represented to investors that the government of the Cayman Islands had no tax reporting agreement with the United States and therefore any investment earnings would be sheltered from tax.

12.    It was further part of the scheme and artifice to defraud that the defendants, and the uncharged schemers, in order

4

to attract new investors, would and did encourage employees, investors and potential investors to recommend the investment opportunity to others, representing that they would earn three (3) percent of any new money invested as a "referral fee" or "gift."

## IV.  **DIVERSION OF INVESTOR MONEY**

13.  It was further part of the scheme and artifice to defraud that the defendants, and the uncharged schemers, rather than place investor money into a legitimate "Cayman Islands Investment Program," as had been represented, diverted and misappropriated investors' funds for the defendant's, and uncharged schemers, own personal benefit.

14.  It was further part of the scheme and artifice to defraud that the monies received from investors was not invested or spent in a manner likely to produce income for the investors, but was used for the following purposes:

a.  To maintain defendants' and uncharged schemers, lifestyle;

b.  To create and maintain a false facade that the defendants, and the uncharged schemers, were engaged in legitimate investment activity;

c.  To pay money as a fee or "interest" to certain investors to give the illusion that investments had been made which produce these earnings, when in reality these monies were monies subsequent investors had invested;

5

## V.  OMISSIONS

15.  It was a further part of the scheme and artifice to defraud that the defendants, and the uncharged schemers, and others, did conceal and omit to state material facts which were necessary to prevent the representations the defendants were making from being misleading, including but not limited to the following:

a.  That the investors' money was used primarily for the personal benefit of the defendants, and the uncharged schemers,  and others and to make lulling payments to other investors;

b.  That an individual investor's money that was available for withdrawal from the defendants' and the uncharged schemers, investment scheme was available only because the defendants, and the uncharged schemers,  would take money invested by others and give it to an investor;

c.  That the investor fee or "interest" could and was only paid when the defendants, and the uncharged schemers, used money invested by others;

d.  That Paul Lazzaro and MONTEZ SALAMASINA OTTLEY never invested investor's money into any "Cayman Islands Investment Program."

e.  That Paul Lazzaro was not an investment broker nor had he ever been licensed as a broker.

## VI.  **LULLING ACTIVITIES**

16.  It was further a part of the scheme and artifice to defraud that for the purpose of lulling investors and potential investors who had been defrauded or were intended to be defrauded, into a false sense of security regarding their investment, the defendants, and the uncharged schemers, would give investors' money which the defendants, and the uncharged schemers, claimed were fee or "interest" payments; when in truth and in fact, as the defendants, and the uncharged schemers, well knew at the time, the fee or interest payment was taken from money invested by others.

17.  It was further a part of the scheme and artifice to defraud that for the purpose of lulling investors and potential investors into a false sense of security regarding their investment, the defendants, and the uncharged schemers, told investors that their investment was insured.

18.  It was further a part of the scheme and artifice to defraud that for the purpose of lulling investors into a false sense of security regarding their investment and deter detection of the scheme, letters and memorandums were mailed and faxed to investors to reassure investors that all was well, discouraging investors from investigating and uncovering the fraud, thereby delaying investors ultimate complaint to the authorities.

## VII.  **THE MAILINGS**

19.    On or about the dates set forth below, within the
District of Hawaii, the defendants, MONTEZ SALAMASINA OTTLEY and
HELEN A. SCHLAPAK, and including Paul Lazzaro, John Wright,
Shyuan Tan and Rande Scott Worcester, who are not charged in this
Indictment, for the purpose of executing the aforesaid scheme and
artifice to defraud and attempting to do so, did knowingly cause
to be delivered by United States Postal service mail and  private
and commercial interstate carrier, informational materials,
investment monies and fee or "interest" payments, according to
direction thereon, including but not limited to the following
mailings, with each such mailing constituting a separate count of
this indictment:

| COUNT | DATE | FROM | TO | ITEM(S) MAILED |
|---|---|---|---|---|
| 1 | 2/1/98 through 12/22/99 | Montez Ottley Honolulu, Hawaii | Shirley Machado Kauai, Hawaii | Investment Program Information |
| 2 | 2/1/98 through 12/22/99 | Shirley Machado | Montez Ottley Honolulu, Hawaii | Investment Program Information |
| 3 | 7/20/98 | Shyuan Tan | Terence Chin Poh Teo 453 Upper East Coast Rd. #01-04 The Summit, Singapore 466501 Republic of Singapore | First Hawaiian Bank Cashier's Check 4912478-1 in the amount of $1,500 |
| 4 | 9/1/98 | Shyuan Tan | Tham Lai Koon Blk 99 Aljunied Crescent #04-395 Singapore 380099 | First Hawaiian Bank Cashier's Check 395808 in the amount of $2,000 |
| 5 | 9/2/98 | Lynn Whitaker 44 Ashton Ave. East Falmouth MA 02536 Certified Mail Z-052-670-479 | Helen Schlapak P.O. Box 31023 Honolulu, HI 96820 | Cashier's Check No. 577711316 Payable to Helen Schlapak in the amount of $4,000 |

| 6 | 9/14/98 | Helen Schlapak | Kathleen Brennan and Sara McIntosh P.O. Box 2845 Ranchos De Taos, NM | Cashier's check 3495076 in the amount of $3,280 |
| 7 | 9/30/98 | John Wright | John Brockman 5639 Fairfield Dr. Milan, TN 38358 | U.S. Postal Service money orders 69215773048 and 69215773050 in the amount of $600 each |
| 8 | 10/03/98 | Helen Schlapak P.O. Box 31203 Honolulu, HI | Ronald D. Sloop 1801 N. Michigan Roswell, NM 88201 | American Savings Bank Cashier's Check 3495717 in the amount of $880 |
| 9 | 10/07/98 | Helen Schlapak P.O. Box 31203 Honolulu, HI 96820-1203 Certified Mail Z-269-805-058 | Lynn W. Whitaker 44 Ashton Avenue East Falmouth, MA 02536 | $320 cash |

All in violation of Title 18, United States Code, Section 1341; and Title 18, United States Code, Section 2.

## COUNTS 10-17
### [WIRE FRAUD]

The Grand Jury further charges that:

20.  Paragraphs 1 through 18 of this Indictment are realleged as if fully set forth herein.

21.  On or about the dates set forth below, within the District of Hawaii and elsewhere, the defendants MONTEZ SALAMASINA OTTLEY and HELEN A. SCHLAPAK, and including Paul Lazzaro, John Wright, Shyuan Tan and Rande Scott Worcester, who are not charged in this Indictment, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, knowingly did transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce,

9

including but not limited to the following writings, signs, signals, pictures, and sounds, with each constituting a separate Count of this Indictment:

| COUNT | DATE | FROM | TO | ITEM |
|---|---|---|---|---|
| 10 | 7/6/98-6/3/99 | Montez Ottley | Eugene Reid | Investment Program Information |
| 11 | 8/25/98 | John Wright Fidelity Escrow Acct. #030-37983 | PNC Bank Montclair, New Jersey Acct. #800-470-5936 Ken Hamje World Covenant Foundation | $93,440 (wire transfer) |
| 12 | 08/28/98 | Lynn Enterprises, John Brockman Union Bank, TN * John Wright client | Eureka Management, American Savings Bank, Acct. No. 45055426 | $15,000 (wire transfer) |
| 13 | 09/02/98 | Kathleen Brennan and Sara McIntosh, Peoples Bank, Taos, NM, Acct. No. 107004491 * Helen Schlapak client | Eureka Management American Savings Bank, Honolulu, HI Acct. No. 45055426 | $41,000 (wire transfer) |
| 14 | 09/08/98 | HN IV and Assoc. 7825 Fay Ave. North 208 La Jolla, CA 92037 via Bank of America, San Francisco | Eureka Management American Savings Bank, Honolulu, HI, Acct. No. 45055426 | $98,430 (wire transfer) |
| 15 | 09/10/98 | John R. "Jack" Dawson and Ken Hamje CSM Computer Personal Inc., Chase Bank of Texas, Houston, Texas, Acct. No. 321370765 | Eureka Management, American Savings Bank, Honolulu, HI Acct. No. 45055426 | $23,000 (wire transfer) |
| 16 | 09/10/98 | Ronald Sloop Bank of the Southwest, Roswell, NM | Eureka Management, American Savings Bank Acct. 45055426, Honolulu, HI * Helen Schlapak Account | $11,000 (wire transfer) |

| 17 | 03/17/98 12/16/99 | Montez Ottley | Doug Jessop | Investment Program Information |

All in violation of Title 18, United States Code, Section 1343; and Title 18, United States Code, Section 2.

## COUNT 18
### [CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS]

The Grand Jury further charges that:

### I.    The Conspiracy

22.  From in or about June of 1997 and continuing to in or about October of 1998, in the District of Hawaii and elsewhere, the defendants MONTEZ SALAMASINA OTTLEY and HELEN A. SCHLAPAK, and including Paul Lazzaro, John Wright, Shyuan Tan, and Rande Scott Worcester, who are not charged in this Indictment,  and others known and unknown to the Grand Jury, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, unlawfully conspired, combined and agreed, together, to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, involving the movement of funds by wire or other means, which involved the proceeds of a specified unlawful activity, that is, mail fraud in violation of Title 18, United States Code, Section 1341, and wire fraud in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to promote the carrying on of the above-described specified unlawful activity, to conceal and disguise the nature, source, ownership

11

and control of the proceeds of the specified unlawful activity described above, and to avoid a transaction reporting requirement under federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 1956(a)(1)(B)(ii).

## II. WAYS AND MEANS OF THE CONSPIRACY

23. By means of the foregoing financial transactions the defendants, and the uncharged co-conspirators, caused investors' monies to be transferred to corporate accounts established to promote the scheme, to wit, Eureka Management and MSO, Inc., and to personal and escrow accounts, from which fee or "interest" payments (lulling payments) would be made, thereby lulling investors and potential investors into a false sense of security regarding their investment and encouraging new investment and reinvestment of currently invested funds.

24. By means of the foregoing financial transactions the defendants, and the uncharged co-conspirators, caused investors' monies to be transferred to corporate accounts, to wit, Eureka Management and MSO, Inc., from which fee or "interest" payments (lulling payments) would be made, thereby concealing and disguising the nature, source, ownership and control of the monies, giving the appearance of earnings on a legitimate investment. The defendants, and the uncharged co-conspirators, also caused investment monies to be transferred to their personal bank and escrow accounts, thereby concealing and disguising the nature, source, ownership and control of the

12

monies to be used for lulling payments and to be diverted to their own personal gain and use.

25.  To avoid the filing of a transaction report required under federal law, the defendants, and the uncharged co-conspirators,  and others would cause cash deposits and withdrawals representing the proceeds from the "Cayman Islands Investment Program" to be structured by breaking up cash deposits and withdrawals in excess of $10,000 into amounts of less than $10,000.  By breaking up their cash deposits and withdrawals in this fashion, the defendants and their co-conspirators sought to avoid the bank's filing of currency transaction reports that were required to be filed with the Internal Revenue Service on all currency transactions over $10,000.

### III.  **Entities**

26.  At all relevant times,

a.  American Savings Bank, Amerika Samoa Bank, Fort Shafter Federal Credit Union, Bank of Hawaii, City Bank, Oahu Educational Employees Federal Credit Union, Hawaii National Bank, and First Hawaiian Bank, were all domestic financial institutions operating in the District of Hawaii and were required by statute and regulation to file a report (Currency Transaction Report or "CTR") with the Internal Revenue Service ("IRS") for each deposit, withdrawal, exchange of currency, or other payment or transfer, by, through, or to, such financial institution which involves the transaction in currency of more

than $10,000 pursuant to Title 31, United States Code, Section 5313(a).

b.   A Currency Transaction Report or "CTR" is a report that is filed with the Internal Revenue Service that details the participant(s) in a currency transaction at a financial institution that totals more than $10,000.

### IV.   Overt Acts

27.   In furtherance of this conspiracy and to effect the objects thereof, in the District of Hawaii, the defendants and their co-conspirators performed overt acts, including but not limited to the following:

a.   On March 30, 1998, MONTEZ SALAMASINA OTTLEY and Paul Lazzaro opened client trust account 48-047874, at First Hawaiian Bank, Honolulu, Hawaii, under the name MSO, Inc., dba Pacific Travel Service with both listed as authorized signatures.

b.   On April 7, 1998, MONTEZ SALAMASINA OTTLEY and Paul Lazzaro opened checking account 271-000405 at Amerika Samoa Bank, Honolulu, Hawaii, on which MONTEZ SALAMASINA OTTLEY and Paul Lazzaro were listed as officers of MSO, Inc., both having authority to withdraw and transfer funds.

c.   On May 27, 1998, HELEN A. SCHLAPAK, opened account 271101414 at Amerika Samoa Bank, Honolulu, Hawaii.

d.   On June 3, 1998, HELEN A. SCHLAPAK, opened account 271101562 at Amerika Samoa Bank, Honolulu, Hawaii.

e.   On June 10, 1998, MONTEZ SALAMASINA OTTLEY

14

and Paul Lazzaro opened checking account number 45-055426 at American Savings Bank, Honolulu, Hawaii, on which both were listed as general manager of Eureka Management with authority to withdraw and transfer funds.

f.  On August 20, 1998, HELEN SCHLAPAK opened checking account 05-966388 at American Savings Bank, Honolulu, Hawaii.

g.  MONTEZ SALAMASINA OTTLEY and Paul Lazzaro opened client trust account 0004-083962 and 0004-084489, at Bank of Hawaii, Honolulu, Hawaii, under the name of MSO, Inc., dba Pacific Travel Systems.

28.  Those acts set forth below in Counts 19-53 are incorporated here by reference as overt acts in furtherance of and to effect the objects of the conspiracy.

All in violation of Title 18, United States Code, Section 1956 (h).

### COUNTS 19-25

### [MONEY LAUNDERING]

### PROMOTE

The Grand Jury further charges that:

29.  On or about the dates listed below, in the District of Hawaii and elsewhere, the defendants MONTEZ SALAMASINA OTTLEY and HELEN A. SCHLAPAK, and including Paul Lazzaro, John Wright, Shyuan Tan and Rande Scott Worcester, who are not charged in this Indictment, did knowingly conduct and

caused to be conducted financial transactions affecting interstate commerce, involving the movement of funds by wire or other means, which involved the proceeds of a specified unlawful activity, that is, mail fraud in violation of Title 18, United States Code, Section 1341 and wire fraud in violation of Title 18, United States Code, Section 1343, with the intent to promote the carrying on of the specified unlawful activity and that while conducting or attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, to include but not limited to the following financial transactions, with each constituting a separate count of this Indictment:

| COUNT | DATE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|
| 19 | 07/14/98 | Payment of salary to employee Shyuan Tan from fraud funds- American Savings Bank Check 1052 | $600.00 |
| 20 | 07/20/98 | Payment of salary to employee Curtis Lai from fraud funds- American Savings Bank Check 1088 | $600.00 |
| 21 | 08/25/98 | Purchase of American Savings Bank Cashier's Check 3494683 with fraud funds for lulling payment | $ 93,000.00 |
| 22 | 09/01/98 | Purchase of American Savings Bank Cashier's Check 3494864 with fraud funds for lulling payment to Paragon Resources | $175,000.00 |
| 23 | 09/10/98 | Purchase of American Savings Bank Cashier's Check 3495076 with fraud funds for lulling payment to Kathleen Brennan/Sara McIntosh | $ 3,280.00 |
| 24 | 09/29/98 | Purchase of American Savings Bank Cashier's Check 3495645 with fraud funds for lulling payment to HN IV & Associates | $148,480.00 |

| 25 | 10/03/98 | Purchase of American Savings Bank Cashier's Check with fraud funds for lulling payment to Ronald Sloop | $ | 880.00 |

All in violation of Title 18, United States Code,
Section 1956(a)(1)(A)(i); and Title 18, United States Code,
Section 2.

**COUNTS 26-37**
**[MONEY LAUNDERING**
**CONCEAL AND DISGUISE]**

The Grand Jury further charges that:

30.    On or about the dates listed below, in the
District of Hawaii and elsewhere, the defendants MONTEZ
SALAMASINA OTTLEY and HELEN A. SCHLAPAK, and including Paul
Lazzaro, John Wright, Shyuan Tan and Rande Scott Worcester, who
are not charged in this Indictment, did knowingly conduct and
caused to be conducted financial transactions affecting
interstate commerce, involving the movement of funds by wire or
other means, which involved the proceeds of a specified unlawful
activity, that is, mail fraud in violation of Title 18, United
States Code, Section 1341 and wire fraud in violation of Title
18, United States Code, Section 1343, knowing that the
transactions were designed in whole and in part to conceal and
disguise the nature, source, ownership and control of the
proceeds of said specified unlawful activity, and that while
conducting or attempting to conduct such financial transactions,
knew that the property involved in the financial transactions
represented the proceeds of some form of unlawful activity, to

include but not limited to the following financial transactions, with each constituting a separate count of this Indictment:

| COUNT | DATE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|
| 26 | 08/05/98 | Fraud funds transferred to John Wright via American Savings Bank Check 1225 | $ 8,000.00 |
| 27 | 08/05/98 | Fraud funds transferred to John Wright via American Savings Bank Check 1226 | $ 8,000.00 |
| 28 | 08/05/98 | Fraud funds transferred to John Wright via American Savings Bank Check 1227 | $ 8,000.00 |
| 29 | 08/05/98 | Fraud funds transferred to John Wright via American Savings Bank Check 1229 | $ 7,000.00 |
| 30 | 08/05/98 | Fraud funds transferred to John Wright via American Savings Bank Check 1233 | $ 5,000.00 |
| 31 | 08/05/98 | Fraud funds transferred to John Wright via American Savings Bank Check 1234 | $ 2,520.00 |
| 32 | 09/01/98 | Fraud funds transferred to Schlapak via American Savings Bank check 1342 | $110,790.40 |
| 33 | 09/01/98 | Fraud funds deposited Eureka Management American Savings Bank Account 45-055426 | $ 30,000.00 |
| 34 | 09/15/98 | Fraud funds transferred to Schlapak via American Savings Bank check 1412 | $ 155,490.00 |
| 35 | 09/21/98 | Purchase of American Savings Bank Cashier's Check 3495322 with fraud funds | $ 16,800.00 |
| 36 | 09/21/98 | Purchase of American Savings Bank Cashier's Check 3495323 with fraud funds | $ 4,170.00 |
| 37 | 09/21/98 | Purchase of American Savings Bank Cashier's Check 3495324 with fraud funds | $147,164.00 |

All in violation of Title 18, United States Code, Section 1956 (a)(1)(B)(i); and Title 18, United States Code, Section 2.

<u>COUNTS 38-53</u>
[MONEY LAUNDERING]
**TRANSACTION REPORTING**

The Grand Jury further charges that:

31. On or about the dates listed below, in the District of Hawaii and elsewhere, the defendants MONTEZ SALAMASINA OTTLEY and HELEN A. SCHLAPAK, and including Paul Lazzaro, John Wright, Shyuan Tan and Rande Scott Worcester, who are not charged in this Indictment, did knowingly conduct and caused to be conducted financial transactions affecting interstate commerce, involving the movement of funds by wire or other means, which involved the proceeds of a specified unlawful activity, that is, mail fraud in violation of Title 18, United States Code, Section 1341 and wire fraud in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to avoid a transaction reporting requirement under federal law and that while conducting or attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, to include but not limited to the following financial transactions, with each constituting a separate count of this Indictment:

| COUNT | DATE | ISSUED BY | ISSUED TO | ITEM |
|-------|------|-----------|-----------|------|
| 38 | 1/16/98 | Montez Ottley Bank of Hawaii Check 1281 | Paul Lazzaro | $5,000.00 |

19

| 39 | 1/16/98 | Montez Ottley Bank of Hawaii Check 1282 | Paul Lazzaro | $5,000.00 |
|---|---|---|---|---|
| 40 | 1/16/98 | Montez Ottley Bank of Hawaii Check 1283 | Paul Lazzaro | $5,000.00 |
| 41 | 1/16/98 | Montez Ottley Bank of Hawaii Check 1284 | Paul Lazzaro | $5,000.00 |
| 42 | 1/16/98 | Montez Ottley Bank of Hawaii Check 1286 | Paul Lazzaro | $5,000.00 |
| 43 | 6/17/98 | Helen Schlapak Amerika Samoa Bank Check 130 | Helen Schlapak | $8,000.00 |
| 44 | 7/23/98 | Helen Schlapak Amerika Samoa Bank Check 144 | Helen Schlapak | $7,000.00 |
| 45 | 9/21/98 | Montez Ottley American Savings Bank Check 1457 | John Wright | $8,000.00 |
| 46 | 9/21/98 | Montez Ottley American Savings Bank Check 1458 | John Wright | $8,000.00 |
| 47 | 9/21/98 | Montez Ottley American Savings Bank Check 1459 | John Wright | $8,000.00 |
| 48 | 9/21/98 | Montez Ottley American Savings Bank Check 1461 | John Wright | $8,000.00 |
| 49 | 9/21/98 | Montez Ottley American Savings Bank Check 1454 | Shyuan Tan | $9,000.00 |
| 50 | 9/21/98 | Montez Ottley American Savings Bank Check 1455 | Shyuan Tan | $9,000.00 |
| 51 | 9/21/98 | Montez Ottley American Savings Bank Check 1456 | Shyuan Tan | $8,000.00 |

| 52 | 9/21/98 | Montez Ottley American Savings Bank Check 1463 | Shyuan Tan | $8,000.00 |
| 53 | 9/21/98 | Montez Ottley American Savings Bank Check 1466 | Shyuan Tan | $5,522.00 |

All in violation of Title 18, United States Code, Section 1956 (a)(1)(B)(ii); and Title 18, United States Code, Section 2.

## COUNT 54
### [CONSPIRACY TO ENGAGE IN MONETARY TRANSACTIONS]

The Grand Jury further charges that:

### I.    The Conspiracy

32.    From in or about April of 1998 and continuing to in or about October of 1998, in the District of Hawaii, the defendants MONTEZ SALAMASINA OTTLEY and HELEN A. SCHLAPAK, and including Paul Lazzaro, John Wright, Shyuan Tan, Rande Scott Worcester, and Stephen Marn, who are not charged in this Indictment, and others known and unknown to the grand jury, unlawfully conspired, combined, and agreed, together, to engage and attempt to engage in monetary transactions within the United States, to wit, the deposit, withdrawal, transfer, exchange, and movement by wire or other means, in and affecting interstate commerce, of funds, in criminally derived property of a value in excess of $10,000 which had been derived from a specified unlawful activity, by, through, and to a financial institution, in violation of Title 18, United States Code, Section 1957.

## II.   Ways and Means of the Conspiracy

33.   Paragraphs 1 through 18 of this Indictment are realleged as if fully set forth herein.

34.   By means of the foregoing monetary transactions the defendants', and uncharged co-conspirators, caused investors' monies to be transferred to corporate and personal accounts at Fidelity Escrow Services Corporation which had been established to promote the scheme, to wit, to convert investors' wire transfers and checks to cash, from which fee or "interest" payments (lulling payments) would be made and profits derived. Upon receipt of investors' monies Stephen Marn, President of Fidelity Escrow Services Corporation, Honolulu, Hawaii, would authorize the issuance of checks on Fidelity Escrow Services Corporation Account at Hawaii National Bank which would be deposited to fund wire transfers of fee or "Interest" payments (lulling payments) to Investors.  Also, as directed by MONTEZ OTTLEY, Stephen Marn would order specified denominations of cash to be readied by Hawaii National Bank, for pick-up by John Wright or Rande Scott Worcester.

## III.   Overt Acts

35.   In furtherance of this conspiracy and to effect the objects thereof, in the District of Hawaii, the defendants and their co-conspirators performed overt acts, including but not limited to the following:

a.   On or before April 28, 1998, MONTEZ OTTLEY and Paul Lazzaro opened Escrow Account 98-4760, under the name of

Pacific Travel, with Fidelity Escrow Services Corporation in Honolulu, Hawaii.

       b.  On or before May 6, 1998, Rande Scott Worcester opened Escrow Account 98-4568 under his own name with Fidelity Escrow Services Corporation in Honolulu, Hawaii.

       c.  On or before June 12, 1998, Rande Scott Worcester opened Escrow Account 98-4825 under his own name with Fidelity Escrow Services Corporation in Honolulu, Hawaii.

       d.  On or before June 18, 1998, John Wright opened Escrow Account 98-4836 under his own name with Fidelity Escrow Services Corporation in Honolulu, Hawaii.

       e.  On or before June 19, 1998, MONTEZ OTTLEY and Paul Lazzaro opened Escrow Account 98-4847 under the name of Eureka Management with Fidelity Escrow Services Corporation in Honolulu, Hawaii.

       f.  On or before the dates specified above, Stephen Marn, President of Fidelity Escrow Services Corporation, Honolulu, Hawaii, authorized the opening of the above-described Escrow Accounts for MONTEZ OTTLEY, Paul Lazzaro, John Wright and Rande Scott Worcester.

       g.  Those acts set forth below in Counts 55-58 are incorporated here by reference as overt acts in furtherance of the conspiracy.

       All in violation of Title 18, United States Code, Section 1956(h).

23

## COUNTS 55-58
### [ENGAGING IN MONETARY TRANSACTIONS]

The Grand Jury further charges that:

36.  From in or about April of 1998 and continuing to in or about October of 1998, in the District of Hawaii, the defendants MONTEZ SALAMASINA OTTLEY and HELEN A. SCHLAPAK, and including Paul Lazzaro, John Wright, Shyuan Tan, Rande Scott Worcester and Stephen Marn, who are not charged in this Indictment, did knowingly engage and attempt to engage in monetary transactions by, through or to financial institutions, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is deposits, withdrawals, transfers, exchanges and movement by wire or other means, of U.S. currency and funds, with such property having been derived from a specified unlawful activity, that is, mail fraud in violation of Title 18 United States Code Section 1341 and wire fraud in violation of Title 18, United States Code, Section 1343, to include but not limited to the following monetary transactions, with each constituting a separate count of this Indictment:

| COUNT | DATE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|
| 55 | 08/05/98 | Wire transfer of lulling payments from Hawaii National Bank to PNC Bank for World Covenant Foundation | $ 45,250.00 |
| 56 | 08/18/98 | Deposit of American Savings Bank Cashier's Check 3494560 into Fidelity Escrow's Hawaii National Bank Account for wire transfer | $ 68,000.00 |

24

| | | | |
|---|---|---|---|
| 57 | 08/25/98 | Deposit of American Savings Bank Cashier's Check 3494683 into Fidelity Escrow's Account at Hawaii National Bank Account for wire transfer. | $ 93,000.00 |
| 58 | 09/22/98 | Deposit of American Savings Bank Cashier's Check 3495324 into Hawaii National Bank for wire transfer | $147,164.00 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

<u>**COUNTS 59-91**</u>

The Grand Jury further charges that:

37.  Paragraphs 1 through 18 of the Indictment are realleged as if fully set forth herein.

38.  On or about the dates set forth below, in the District of Hawaii, the defendants, MONTEZ SALAMASINA OTTLEY and HELEN A. SCHLAPAK, and including Paul Lazzaro, John Wright and Shyuan Tan, who are not charged in this Indictment, for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, did knowingly structure, assist in structuring, attempt to structure and assist in structuring, the following transactions with domestic financial institutions and did so as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, with each transaction constituting a separate count of this Indictment:

| <u>Count</u> | <u>Check</u> | Date <u>Issued</u> | <u>Issued by</u> | <u>Cashed by</u> | Date <u>Cashed</u> | <u>Amount</u> |
|---|---|---|---|---|---|---|
| 59 | Bank of Hawaii 1225 | 11/24/97 | Montez Ottley | Paul Lazzaro | 11/24/97 | $4,000 |

| 60 | Bank of Hawaii 1226 | 11/24/97 | Montez Ottley | Paul Lazzaro | 11/26/97 | $4,000 |
| 61 | Bank of Hawaii 1227 | 11/24/97 | Montez Ottley | Paul Lazzaro | 11/28/97 | $4,000 |
| 62 | Bank of Hawaii 1332 | 12/12/97 | Montez Ottley | Paul Lazzaro | 12/15/97 | $4,000 |
| 63 | Bank of Hawaii 1333 | 12/12/97 | Montez Ottley | Paul Lazzaro | 12/12/97 | $4,000 |
| 64 | Bank of Hawaii 1334 | 12/12/97 | Montez Ottley | Paul Lazzaro | 12/17/97 | $4,000 |
| 65 | Bank of Hawaii 1344 | 12/12/97 | Montez Ottley | Paul Lazzaro | 12/15/97 | $1,000 |
| 66 | Bank of Hawaii 1281 | 01/16/98 | Montez Ottley | Paul Lazzaro | 01/23/98 | $5,000 |
| 67 | Bank of Hawaii 1282 | 01/16/98 | Montez Ottley | Paul Lazzaro | 01/23/98 | $5,000 |
| 68 | Bank of Hawaii 1283 | 01/16/98 | Montez Ottley | Paul Lazzaro | 01/27/98 | $5,000 |
| 69 | Bank of Hawaii 1284 | 01/16/98 | Montez Ottley | Paul Lazzaro | 01/27/98 | $5,000 |
| 70 | Bank of Hawaii 1286 | 01/16/98 | Montez Ottley | Paul Lazzaro | 01/21/98 | $5,000 |
| 71 | Bank of Hawaii 1462 | 02/06/98 | Montez Ottley | Paul Lazzaro | 02/09/98 | $6,000 |
| 72 | Bank of Hawaii 1463 | 02/06/98 | Montez Ottley | Paul Lazzaro | 02/09/98 | $6,000 |
| 73 | Bank of Hawaii 1464 | 02/06/98 | Montez Ottley | Paul Lazzaro | 02/10/98 | $6,000 |
| 74 | Bank of Hawaii 1158 | 03/02/98 | Montez Ottley | Cash | 03/02/98 | $5,000 |
| 75 | Bank of Hawaii 1159 | 03/02/98 | Montez Ottley | Montez Ottley | 03/02/98 | $5,000 |
| 76 | Bank of Hawaii 1160 | 03/02/98 | Montez Ottley | Cash | 03/03/98 | $5,000 |

| 77 | Bank of Hawaii 1161 | 03/02/98 | Montez Ottley | Cash | 03/03/98 | $5,000 |
| 78 | Bank of Hawaii 1162 | 03/02/98 | Montez Ottley | Cash | 03/03/98 | $5,000 |
| 79 | Bank of Hawaii 1165 | 03/02/98 | Montez Ottley | Cash | 03/02/98 | $5,000 |
| 80 | Bank of Hawaii 1166 | 03/02/98 | Montez Ottley | Montez Ottley | 03/02/98 | $5,000 |
| 81 | Amerika Samoa Bank 130 | 06/17/98 | Helen Schlapak | Helen Schlapak | 06/17/98 | $8,000 |
| 82 | Amerika Samoa Bank 144 | 07/23/98 | Helen Schlapak | Helen Schlapak | 07/23/98 | $7,000 |
| 83 | American Savings Bank 1457 | 09/21/98 | Montez Ottley | John Wright | 09/22/98 | $8,000 |
| 84 | American Savings Bank 1458 | 09/21/98 | Montez Ottley | John Wright | 09/22/98 | $8,000 |
| 85 | American Savings Bank 1459 | 09/21/98 | Montez Ottley | John Wright | 09/22/98 | $8,000 |
| 86 | American Savings Bank 1461 | 09/21/98 | Montez Ottley | John Wright | 09/24/98 | $8,000 |
| 87 | American Savings Bank 1454 | 09/21/98 | Montez Ottley | Shyuan Tan | 09/22/98 | $9,000 |
| 88 | American Savings Bank 1455 | 09/21/98 | Montez Ottley | SHYUAN Tan | 09/22/98 | $9,000 |
| 89 | American Savings Bank 1456 | 09/21/98 | Montez Ottley | Shyuan Tan | 09/21/98 | $8,000 |
| 90 | American Savings Bank 1463 | 09/21/98 | Montez Ottley | Shyuan Tan | 09/24/98 | $8,000 |
| 91 | American Savings Bank 1466 | 09/21/98 | Montez Ottley | Shyuan Tan | 09/24/98 | $5,522 |

All in violation of Title 31, United States Code, Sections 5324(a)(3) and (c)(2), Title 31, Code of Federal Regulations, Section 103.11, and Title 18, United States Code, Section 2.

COUNT 92
[CONSPIRACY TO DEFRAUD THE UNITED STATES]

The Grand Jury further charges:

### I. The Conspiracy

39. Paragraphs 1 through 18 of this Indictment are realleged as if fully set forth herein.

40. From a precise date unknown to the Grand Jury, but by in or about June of 1997, and continuing thereafter through at least in or about February of 2000, in the District of Hawaii and elsewhere, the defendants MONTEZ SALAMASINA OTTLEY and HELEN A. SCHLAPAK did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree together with Paul Lazzaro, who is not charged in this Indictment, and with other individuals, both known and unknown to the Grand Jury to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment and collection of the revenue: to wit, income taxes.

### II.  Person and Entities

41. At all relevant times,

a. Paul Lazzaro held himself out to be an investment broker for the "Cayman Islands Investment Program."

b. Pacific Travel was a Honolulu, Hawaii entity in which MONTEZ OTTLEY was President, and was utilized to collect, transfer, distribute, and maintain cash associated with the "Cayman Islands Investment Program."

c.    Eureka Management Corporation was a Honolulu, Hawaii entity in which MONTEZ OTTLEY and Paul Lazzaro and were both general manager's, and was utilized to collect, transfer, distribute and maintain "Cayman Islands Investment Program" investors' monies.

d.    MSO, Inc., was a Honolulu, Hawaii, entity in which MONTEZ OTTLEY was president, and was utilized to collect, transfer, distribute, and maintain "Cayman Islands Investment Program" investors' monies.

e.    HELEN SCHLAPAK held herself out to be an investment group leader for the "Cayman Island Investment Program"

### III.    Manner and Means By Which The Conspiracy Was Carried Out

42.   The manner and means by which the conspiracy was sought to be accomplished involved, among others, the following conduct involving deceit, craft or trickery:

a.    To conceal the income realized from their investment program from the Internal Revenue Service, defendants MONTEZ OTTLEY and HELEN SCHLAPAK and others known and unknown to the United States Attorney, informed investors in the "Cayman Islands Investment Program" that the program was designed to avoid detection by the Internal Revenue Service and in order to avoid detection no social security numbers were needed and investors could use fictitious names.

b.    To conceal the income realized from their investment program from the Internal Revenue Service, defendants MONTEZ OTTLEY and HELEN SCHLAPAK and others informed investors in

the "Cayman Islands Investment Program" that they would not need to pay federal or states taxes on "Cayman Islands Investment Program" earnings because it was an off shore investment.

c.    To conceal the income realized from the investment program from the Internal Revenue Service, defendants MONTEZ OTTLEY and HELEN SCHLAPAK stored large sums of cash in residences.

d.    To conceal the income realized from the investment program from the Internal Revenue Service, defendants MONTEZ OTTLEY and HELEN SCHLAPAK and others established bank accounts in their personal names and in the names of Pacific Travel, Eureka Management, and MSO, Inc. in order to launder investors' monies and make lulling disbursements.

e.    To conceal the income realized from the investment program from the Internal Revenue Service, defendants MONTEZ OTTLEY and HELEN SCHLAPAK and others would cause cash deposits representing the proceeds from the "Cayman Islands Investment Program" to be structured by breaking up cash deposits and withdrawals in excess of $10,000 into amounts of less than $10,000. By breaking up their cash deposits and withdrawals in this fashion, the defendants and their co-conspirators sought to avoid the bank's filling of currency transaction reports that were required to be filed on all currency deposits and withdrawals over $10,000.

IV.    Overt Acts

43.    In furtherance of the conspiracy, and to effect the objects thereof MONTEZ OTTLEY and HELEN SCHLAPAK and others did the following overt acts, among others, in the District of Hawaii and elsewhere:

a.    In or about June of 1997, MONTEZ OTTLEY met with co-conspirator Paul Lazzaro in Salt Lake City, Utah, and discussed a fraudulent Cayman Islands investment scheme wherein investors would receive an eight percent lulling payment per week on their investment and the remaining money would be split between MONTEZ OTTLEY and Paul Lazzaro.

b.    To conceal or disguise the true nature, location, source, ownership and control of the monies used to lull investors and to promote the scheme, MONTEZ OTTLEY and Paul Lazzaro opened Account No. 45-055426 at American Savings Bank under the corporate name of Eureka Management.

c.    To conceal or disguise the true nature, location, source, ownership and control of the monies used to lull investors and to promote the scheme, MONTEZ OTTLEY and Paul Lazzaro opened Account No. 271-000405 with Bank of Amerika Samoa under the corporation name of MSO, Inc.

d.    To conceal or disguise the true nature, location, source, ownership and control of the monies used to lull investors and to promote the scheme, HELEN SCHLAPAK opened Account 271101414 at Amerika Samoa Bank, Honolulu, Hawaii.

31

e.    To conceal or disguise the true nature, location, source, ownership and control of the monies used to lull investors and to promote the scheme, HELEN SCHLAPAK opened Account 271101562 at Amerika Samoa Bank, Honolulu, Hawaii.

f.    To conceal or disguise the true nature, location, source, ownership and control of the monies used to lull investors and to promote the scheme, HELEN SCHLAPAK opened Account 05-966388 at American Savings Bank, Honolulu, Hawaii.

g.    On or about the dates set forth in Counts 59-91 defendants MONTEZ OTTLEY and HELEN SCHLAPAK and others, structured the disbursement of cash proceeds from the "Cayman Island Investment Program" by causing checks to be issued in an amount of less than $10,000, however, cumulatively totaling more than $10,000, with each transaction incorporated here by reference as overt acts in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 371.

### COUNT 93

The Grand Jury charges:

44.    That on or about March 21, 1999, in the District of Hawaii, Defendant MONTEZ SALAMASINA OTTLEY, a resident of Honolulu, Hawaii, did willfully make and subscribe a Form 1040, Individual Income Tax Return, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said Form 1040, Individual Income Tax Return for the calendar year 1997, which was

filed for the tax year beginning January 1, 1998 and ending
December 31, 1998, she did not believe to be true and correct as
to every material matter in that the said Form 1040 Individual
Income Tax Return for the calendar year 1997, filed for the tax
year beginning January 1, 1998 and ending December 31, 1998,
stated at Line 21 that she had a loss of $72,000 for 1998 which
amount was carried forward from the attached Form 2555, Foreign
Earned Income, whereas, as she then and there well knew and
believed she had realized no income from abroad and did not suffer
the loss reported.

In violation of Title 26, United States Code,
Section 7206(1).

## COUNT 94

The Grand Jury further charges that:

45.    On or about March 21, 1999, in the District of
Hawaii, Defendant MONTEZ SALAMASINA OTTLEY knowingly made and
presented to the Internal Revenue Service, an agency of the
Department of the Treasury, a claim against the United States for
payment, which she knew to be false, fictitious and fraudulent, by
preparing and causing to be prepared and filing and causing to be
filed, what purported to be a 1998 Federal Income Tax Return,
wherein she claimed an income tax refund in the amount of
$30,000.00, knowing such claim to be false, fictitious and
fraudulent.

In violation of Title 18, United States Code,
Section 287.

## Count 95

The Grand Jury further charges that:

46.    Paragraphs 1 through 21 of this Indictment are realleged as if fully set forth herein.

47.    As a result of committing one or more of the foregoing offenses alleged in Counts 1-17 of this Indictment, Defendant MONTEZ OTTLEY shall forfeit to the United States any and all property constituting, or derived from, proceeds that Defendant MONTEZ OTTLEY obtained directly or indirectly as a result of any of said violations, pursuant to Title 18, United States Code, Section 982(a)(2).  Those properties include, but are not limited to, the following:

1.    A sum of money equal to $67,000,000 in United States currency, representing the amount of proceeds obtained as a result of the offense, and all interest and proceeds traceable thereto, in that such sum is property constituting, or derived from, proceeds defendant obtained directly or indirectly as a result of said violations;

2. Nine Hundred Fifteen Thousand Twenty Dollars and Thirty Cents ($915,020.30) in United States currency from American Savings Bank obtained on October 8, 1998.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;
(2) has been transferred or sold to, or deposited with, a third person;
(3) has been placed beyond the jurisdiction of the Court;

34

(4) has been substantially diminished in value; or
(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. §982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Sections 982 and Title 18, United States Code, Sections 1341 and 1343.

DATED: _June 13 2001_, Honolulu, Hawaii.

A TRUE BILL

/s/
_____
FOREPERSON, Grand Jury

_____
ELLIOT ENOKI
United States Attorney
District of Hawaii

_____
LESLIE E. OSBORNE, JR.
LARRY L. BUTRICK
Assistant U.S. Attorneys

United States v. Montez Salamasina Ottley, et.al.
Cr. No. 00-00126 HG
"Indictment"